GRANADA CORPORATION,
et al., Relator,

v.

The HONORABLE FIRST COURT
OF APPEALS, Respondent.

No. D–1764.

Supreme Court of Texas.

Dec. 16, 1992.

Rehearing Overruled Jan. 20, 1993.

Grant Cook, Jerry V. Walker, Robert A. Plessala, Houston, for relator.

Larry D. Thompson, Lee H. Rosenthal, Walter Workman, Jerry V. Walker, Hugh P. Touchy, Ralph Keen, Richard Parker, Michelle E. McCoy, Jeffrey T. Nobles, Lynn Liberato, Claudia Wilson Frost, David Hricik, Houston, Joe R. Greenhill, Austin, James Slaughter, Charles W. Brown, Rod Gorman, Stephen S. Andrews, Richard L. Ellison, Houston, for respondent.

## OPINION

MAUZY, Justice.

This mandamus proceeding presents issues relating to (1) waiver of the attorney-client and work product privileges by a party's inadvertent disclosure of documents and (2) application of the crime-fraud exception to the attorney-client privilege. The court of appeals ordered the trial court to vacate its order, which protected the documents at issue from discovery, and enter an order consistent with the following: documents not tendered to the trial court for *in camera* inspection are not privileged; Granada Corporation waived its claims of privilege to documents inadvertently produced; and, 62 of the 126 documents at issue are subject to discovery under the crime-fraud exception. *Freeman v. Bianchi*, 820 S.W.2d 853. Granada now seeks mandamus relief from the court of appeals order. The petition is denied.

### I. Factual Background

The underlying suit arose from Granada's 1985 takeover of Immuno Modulation Laboratories Inc. (IML), a Houston-based firm that manufactured interferon medicines for livestock. In January 1985, Granada agreed to provide up to five million dollars in project funding. In accordance with the agreement, IML sent its shareholders an exchange offer asking them to

convey their stock back to IML in exchange for participating royalty certificates which would entitle them to share in IML's future profits. About fifty shareholders accepted the offer, as a result of which Granada ultimately obtained eighty-six percent of the outstanding shares. Two years later, Granada transferred IML's assets to a subsidiary, Granada Genetics, Inc., leaving the former IML shareholders without payment for the stock they had traded.

The former shareholders (collectively "Freeman") filed suit in October 1987, claiming that Granada's officers had fraudulently induced them to relinquish their IML stock. The present action is the latest phase of a protracted dispute arising from a 1988 discovery request.

Freeman filed his first request for production in June 1988. In response, Granada's counsel permitted Freeman to review 150,000 pages of documents. After review, Freeman designated 18,000 documents for photocopying and production, among them the four memoranda at issue in this case. Granada agreed to produce most of the documents, but refused to produce 104 that it claimed were privileged or exempt from discovery, including the four memoranda at issue. For some reason, all four memoranda were included in the photocopied documents released to Freeman. The trial court found that the memoranda were included inadvertently. In November of 1988, Granada filed a motion for protection with regard to the 104 contested documents, apparently not yet aware that the memoranda had been released.

Discovery proceeded, and during depositions taken in September 1989, Freeman's attorneys tendered three of the four memoranda to Granada's president, who was questioned about its contents for several minutes before Granada's attorney objected. Three weeks later, Granada filed an amended motion for protection asking the trial court to order the four memoranda returned. The trial court ultimately granted protection to all contested documents.

Freeman sought mandamus relief from the protective order. The court of appeals granted the relief in part, ordering Grana-da to release the four memoranda, as well as sixty-two other documents it determined to fall within the crime-fraud exception to the attorney-client privilege. Granada now seeks mandamus relief from the court of appeals order on the grounds that 1) mandamus is not available to correct a factual determination by a trial court; 2) the four memoranda were not voluntarily produced, and thus remain privileged; and, 3) the crime-fraud exception does not apply to the sixty-two documents.

## II. Mandamus Relief

The court of appeals properly issued mandamus relief after determining that the trial court abused its discretion in granting protection to discoverable documents and that Freeman would not have an adequate remedy by appeal.

Granada argues that the court of appeals exceeded its authority in granting mandamus relief, contending that the discoverability of the documents is a fact question and that the trial court did not abuse its discretion. We disagree.

The trial court was required to interpret legal rules in making its determinations regarding both the waiver of privilege and the crime-fraud issues. Determination of the waiver-by-disclosure issue required interpretation of Texas Rules of Civil Evidence 511 and 512; the determination of the crime-fraud issue required interpretation of Texas Rule of Civil Evidence 503(d)(1). When mandamus proceedings arise out of the trial court's interpretation of legal rules, review is to be conducted with limited deference to the trial court. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992).

Further, the court of appeals did not, as Granada asserts, exceed its authority in reviewing the documents to determine whether they are discoverable. When, as here, the documents themselves are the only evidence offered to establish an exception to a privilege, it is proper that the reviewing court review the documents to determine if they clearly support the exception. *See Barnes v. Whittington*, 751

S.W.2d 493, 495 (Tex.1988). Because "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts," erroneous analysis or application of the law "will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ." *Walker v. Packer*, 827 S.W.2d at 840.

The court of appeals correctly determined that the trial court's blanket protective order would prevent Freeman from maintaining his cause of action. In order to obtain mandamus relief, the relator "must establish the effective denial of a reasonable opportunity to develop the merits of his or her case, so that the trial would be a waste of judicial resources." *Walker*, 827 S.W.2d at 843. Freeman met this burden. The record demonstrates that the four memoranda are essential to Freeman's claim that Granada defrauded the plaintiff stockholders.

### III. Inadvertent Disclosure

■ Granada produced 150,000 pages of documents for inspection by Freeman. Granada contends that the four memoranda, by which attorneys for Granada advised its officers, were inadvertently included. Freeman designated these memoranda for photocopying; the copies were sent initially to Granada and Bate-stamped prior to release to Freeman.

Allowing that the memoranda were privileged as attorney-client communications, the salient issue is whether the privilege was waived by the disclosure. Rule 511 of the Texas Rules of Civil Evidence provides in pertinent part:

> A person upon whom these rules confer a privilege against disclosure waives the privilege if (1) he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter unless such disclosure itself is privileged. . . .

Granada argues that inadvertent production of privileged documents is necessarily involuntary and therefore does not effect waiver. We disagree.

Inadvertent production is distinguishable from involuntary production. A party who permits access to unscreened documents may, due to inattention, unwittingly—but nonetheless voluntarily—disclose a privileged document. Disclosure is involuntary only if efforts reasonably calculated to prevent the disclosure were unavailing. Thus, although disclosure does not necessarily waive privileges, a party claiming involuntary disclosure has the burden of showing, with specificity, that the circumstances confirm the involuntariness of the disclosure. In addition to precautionary measures, other factors to be examined in determining involuntariness include the delay in rectifying the error, the extent of any inadvertent disclosure, and the scope of discovery. This standard is consistent with the approach adopted by numerous federal courts which now determine waiver by evaluating the circumstances of the disclosure. *See Niagra Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, 125 F.R.D. 578, 587–88 (N.D.N.Y.1989); *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 329 (N.D.Cal.1985); *see also KL Group v. Case, Kay & Lynch*, 829 F.2d 909, 919 (9th Cir.1987); *Clady v. County of Los Angeles*, 770 F.2d. 1421, 1433 (9th Cir.1985), *cert. denied*, 475 U.S. 1109, 106 S.Ct. 1516, 89 L.Ed.2d 915 (1986). Many state courts also take this approach. *See generally McGlynn v. Grinberg*, 172 A.D.2d 960, 568 N.Y.S.2d 481 (1991); *Farm Credit Bank of St. Paul v. Huether*, 454 N.W.2d 710 (N.D. 1990); *Kanter v. Superior Court*, 206 Cal. App.3d 803, 253 Cal.Rptr. 810 (1988); *Sterling v. Keidan*, 162 Mich.App. 88, 412 N.W.2d 255 (1987).

■ Further, this standard is consistent with the rule waiving privileges asserted by untimely objections to discovery requests absent a showing of good cause for the delay. Tex.R.Civ.P. 168(4). Good cause is established and the late filing excused only if the objecting party offers a satisfactory justification for the untimely objection. *See Hobson and Lott v. Moore*, 734 S.W.2d 340, 341 (Tex.1987). Similarly, a party may not present evidence not disclosed in response to a discovery request absent a showing of good cause. Tex.

R.Civ.P. 215(5). With regard to that rule, we recently reaffirmed that inadvertence of counsel alone is not good cause. *Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911, 915 (Tex.1992) (citing *Sharp v. Broadway Nat'l Bank,* 784 S.W.2d 669 (Tex.1990) (per curiam)). In accord with these rules, and the plain language of Tex.R.Civ.Evid. 511, a party seeking to preserve a privilege after disclosure must do more than show inadvertence; rather, the producing party has the burden of justifying preservation of the privilege by showing that the circumstances demonstrate the involuntariness of the disclosure.

The trial court did find that Granada took reasonable precautions to prevent disclosure; but its order indicates that this finding was based solely on evidence of the relatively small proportion of documents inadvertently produced. While the scope of discovery and the extent of involuntary disclosure are relevant to a determination of waiver, they should not alone be determinative. By limiting review to these factors, the trial court's approach might encourage producing parties to flood the discoverer with documents in order to ensure that the number of documents disclosed in error is proportionately low.

When deciding the issue of voluntariness, a court should evaluate all circumstances of the disclosure. Here, it is relevant that Granada did not avail itself of opportunities to prevent disclosure of the memoranda, although it had many. The memoranda were not segregated out in Granada's initial review of the documents opened to Freeman, nor were they detected when Freeman notified Granada of its designations for photocopying or when the copies were sent to Granada before distribution to Freeman. Granada had the opportunity to inventory the documents at many points before production; yet, it was not until the memoranda were tendered during depositions that Granada's counsel realized that they had been released to Freeman. Moreover, Granada only sought

protection of the inadvertently disclosed documents after eleven months had passed.

Granada's conclusory assertion that the disclosure was inadvertent and therefore involuntary offers no circumstantial justification for the disclosure. Under these circumstances, we hold that Granada has failed to sustain its burden of establishing that its disclosure of the documents was involuntary.

## IV. The Crime–Fraud Exception

■ The court of appeals properly held that sixty-two of the contested documents fall within the crime-fraud exception to the attorney-client privilege. Tex.R.Civ.Evid. 503(d)(1).[1]

■ The crime-fraud exception applies only if a prima facie case is made of contemplated fraud. *See Williams v. Williams,* 108 S.W.2d 297, 299–300 (Tex. Civ.App.—Amarillo 1937, no writ). Additionally, there must be a relationship between the document for which the privilege is challenged and the prima facie proof offered. *See In re Sealed Case,* 676 F.2d 793, 812–16 (D.C.Cir.1982).

Freeman offered sufficient proof to establish a prima facie case of fraud: the four memoranda, the minutes of a Board of Directors' meeting and a Shareholders' meeting, and, excerpts from the deposition testimony of the chief executive officer of IML. Taken together, these documents suggest the possibility of fraud. The four memoranda suggest that Granada may have fraudulently misled the shareholders, promising to invest in the growth of IML in order to induce the exchange while taking steps to strip the company of its assets. The minutes of the board and shareholders' meetings relate to Freeman's claim that Granada officers disregarded legal advice concerning abstentions by certain directors on votes pertaining to the sale of IML assets. The deposition testimony, in conjunction with the memoranda, indicate an

---

1. The crime or fraud exception applies with the same force to Granada's claim of work-product exemption. Rule 166b(3)(a) of the Texas Rules of Civil Procedure protects the work-product of

an attorney from disclosure "subject to the exceptions of Texas Rules of Civil Evidence 503(d)."

apparent effort by Granada to misrepresent its plans regarding the sale of IML assets. This proof satisfies Freeman's burden of establishing a prima facie case.

Moreover, we have determined that the sixty-two documents identified by the court of appeals 1) bear a relationship to the prima facie proof submitted by Freeman and 2) suggest a possibility of fraud sufficient to bring the documents within the crime-fraud exception. The documents can be classified into three general categories. The first group are communications relating to the rights of the shareholders under the terms of the exchange offer. These memoranda suggest that Granada's representations to the shareholders may have been fraudulent. They indicate that during the same period that Granada was promising shareholders that it would make the investments necessary to sustain the value of the royalty certificates offered in exchange for stock, its officers were seeking legal advice regarding proposals which would nullify the value of the certificates. The second group relate more specifically to the sale of IML assets to a Granada subsidiary. These documents tend to show that Granada pursued schemes to freeze out the shareholders despite legal advice alerting its officers to the possible illegality of such plans. The third group consists of miscellaneous documents relating to Freeman's allegations: a possible conflict of interest due to Granada's counsel having previously represented Freeman and the termination of an IML officer who had been involved with the sale of the assets. In sum, the sixty-two documents relate to the prima facie proof and afford a possible evidentiary basis for Freeman's allegations of fraud. They are therefore not privileged.

### Conclusion

Any privilege previously applicable to the four inadvertently produced memoranda is waived because Granada failed to establish that the disclosure was involuntary. These memoranda, in conjunction with the other documents offered by Freeman, establish a prima facie case of fraud. Privileges are waived as to the sixty-two documents identified by the court of appeals because they relate to the prima facie proof of fraud and tend to support Freeman's allegations of fraud.

Because we decide that Granada's disclosure waived the privilege as to all four memoranda, we do not consider the court of appeals determination that Granada untimely submitted two of the memoranda for *in camera* review and thus effected waiver of privileges.

The petition for writ of mandamus is denied.