**VOLCANIC GARDENS MANAGEMENT CO., INC., d/b/a Wet 'N' Wild Water World, Relator,**

v.

**The Honorable Sam M. PAXSON, Judge of the 210th Judicial District Court, El Paso County, Texas, Respondent.**

No. 08–92–00383–CV.

Court of Appeals of Texas, El Paso.

Jan. 27, 1993.

Barry H. Edwards, El Paso, for relator.

Before KOEHLER, BARAJAS and LARSEN, JJ.

## OPINION

KOEHLER, Justice.

In this original proceeding for writ of mandamus, Relator seeks an order requiring the trial judge to vacate a protective order and to grant a motion to compel production. Relator sought in the trial court discovery of communications between the real party in interest and his previous attorney relating to Relator's defense of fraud. The trial court denied the discovery. We conditionally grant the writ.

## FACTUAL BACKGROUND

The real party in interest, Eddie Flores (Flores), allegedly injured his right knee on or about July 16, 1989 on one of the rides at Wet 'N' Wild Water World in El Paso County, Texas. Flores employed Attorney Eduardo Lerma (Lerma) to pursue his claim for personal injury damages against the Relator, Volcanic Gardens Management Co., Inc. (Volcanic Gardens), which owns

Wet 'N' Wild. On August 22, 1989, Lerma mailed a letter to Wet 'N' Wild putting it on notice of his representation of Flores in connection with the latter's claim. At some point prior to filing suit, the relationship between Flores and Lerma deteriorated and was terminated. Flores then retained his present attorney who on November 14, 1990, filed suit in his behalf against Volcanic Gardens and Wet 'N' Wild, subsequently amended to include "a chondral fracture of the weight bearing portion of the medial femoral condyle."

During the course of discovery and negotiations, it was learned that Flores had previously suffered a serious job-related injury to his right knee[1] on October 22, 1987 while in the employ of Chevron. The claim arising out of that injury was subsequently settled by agreement between Flores and Chevron's workers' compensation carrier in September 1988, Flores having been represented at the time by an attorney who was and is a partner of the attorney representing him in the present suit.

As a result of information in part given by Lerma to Volcanic Gardens' attorney, and learned from depositions of two of Flores' treating and examining orthopedic surgeons, Volcanic Gardens on May 8, 1992 amended its pleadings to include the affirmative defense of conspiracy by Flores, one or more lawyers and one or more doctors to commit fraud on Volcanic Gardens by attributing the older injuries to the Wet 'N' Wild incident. It was in this context that Volcanic Gardens motioned the court, seeking to take Lerma's deposition by written interrogatories, which motion was on June 8, 1992 granted. As a result, Volcanic Gardens on August 25, 1992, noticed Flores through his attorney that Lerma's deposition by written interrogatories, a copy of which was attached to the notice, would be taken after ten days from the date of service of the notice. Interrogatory Numbers 4, 5 and 6, together with Lerma's answers, which were prematurely

---

**1.** Described by the treating orthopedic surgeon on November 21, 1987 as a "significant chondral lesion of the weightbearing portion of the medial femoral condyle and a transverse fracture of the patella."

made and filed on September 1, 1992, were as follows:

    4.  In connection with the above request [that Flores requested Lerma to represent him to sue Wet 'N' Wild], did Mr. Flores ask you to participate in a fraudulent claim against Wet 'N' Wild?

Answer: In my opinion, yes.

    5.  Did you decline to represent him any further?

Answer: Yes.

    6.  Why did you decline to represent him any further?

Answer: I felt it would be unethical to engage in the representation of what, in my opinion, was a fraudulent claim and one without merit.

Volcanic Gardens then sought on September 24, 1992 to take a second deposition of Lerma by eleven additional interrogatories relating to specific conversations about the fraudulent claim against Wet 'N' Wild, which took place between Lerma and Flores before and after Lerma ceased to represent him. Flores, in response to the second notice, filed a motion for protective order, objections to the notice and a supplemental motion in limine, reasserting the attorney-client privilege.[2] Volcanic Gardens countered with another motion to compel discovery, asserting that any conversations concerning a fraudulent claim were not privileged and that Flores had waived the privilege by failing to object to the first set of interrogatories prior to being answered by Lerma. On October 9, 1992, the trial judge granted Flores' motion and denied the motion of Volcanic Gardens. Volcanic Gardens' petition for mandamus followed.

## STANDARD OF REVIEW

    A writ of mandamus will issue only to correct a clear abuse of discretion by the trial court. An abuse of discretion occurs when the trial court reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992); *Dal–Briar Corporation v. Baskette,* 833 S.W.2d 612, 614 (Tex.App.—El Paso 1992, orig. proceeding). However, the reviewing court may not substitute its judgment for that of the trial court on factual issues committed to the trial court's discretion. As a result, a relator must establish that the trial court reasonably could have reached but one decision. *Walker,* 827 S.W.2d at 839–40. On the other hand, when the trial court's determination of a legal principle is being reviewed, it is not entitled to the same deference. In such matters, the trial court has no discretion. A clear failure to analyze or apply the law correctly will constitute an abuse of discretion and may well result in the issuance of an extraordinary writ. *Walker,* 827 S.W.2d at 840.

## THE LAW ON LAWYER–CLIENT PRIVILEGE

    Rule 503 of the Rules of Civil Evidence[3] provides as follows:

    (b) **General Rule of Privilege.** A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client ... between himself or his representative and his lawyer or his lawyer's representative....

There is no dispute in the case at bar that the communications between Flores and Lerma while the latter was representing the former, sought to be discovered by Volcanic Gardens, were made in the context of an attorney-client relationship, and fall within the general privilege unless the crime/fraud exception provided by Rule 503 applies. That exception is as follows:

    (d) **Exceptions.** There is no privilege under this rule:

---

**2.** Lerma had sometime previously, during an oral deposition taken by Volcanic Gardens, declined to answer any questions touching on his conversations with Flores as a result of attorney/client privilege objections made by Flores' attorney.

**3.** The provisions of the Texas Rules of Criminal Evidence are identical both as to numbering and to content.

(1) *Furtherance of Crime or Fraud.* If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud; ....

Tex.R.Civ.Evid. 503(d)(1). While the burden of proving a privilege is on the party asserting the privilege, *See American Home Assurance Company v. Cooper,* 786 S.W.2d 769, 772 (Tex.App.—El Paso 1990, orig. proceeding), the burden of establishing the crime/fraud exception to the attorney-client privilege is on the party seeking discovery of the communications. *Cigna Corporation v. Spears,* 838 S.W.2d 561, 569 (Tex.App.—San Antonio 1992, orig. proceeding). This is accomplished by making a *prima facie* showing that the client was contemplating the commission of a fraud or crime. *Freeman v. Bianchi,* 820 S.W.2d 853, 861 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding)[4]; *Williams v. Williams,* 108 S.W.2d 297, 300 (Tex.Civ. App.—Amarillo 1937, no writ). Whether there has been a *prima facie* showing of fraud is a matter for the court to determine. *Freeman,* 820 S.W.2d at 861. A *prima facie* showing is made by setting forth evidence that, if believed by the jury, would establish that the client was about to commit, or was engaging in an ongoing fraud. *Id.* at 861–62. The question then arises as to what is meant by the term "fraud" as it might apply to this case in the context of the "prima facie showing" requirement.

Flores argues that the crime/fraud exception does not apply because the alleged fraud, attribution of prior injuries to the accident which forms the basis of this suit, is a collateral issue and cannot constitute a fraud against Volcanic Gardens. The Flores' argument is that since there is considerable inconclusive medical evidence for a jury to consider, Volcanic Gardens cannot establish any damages from the alleged fraud. If the jury finds from the evidence that Flores' injuries and disabilities were not caused by the Wet 'N' Wild accident, Volcanic Gardens will not be damaged. If the jury finds that Flores' injuries were caused by that accident, then there has been no misrepresentation or fraud in making the claim. This argument seems to be based on the concept that the only fraud referred to in the exception to the attorney/client privilege is common law fraud. That concept receives some support in *Cigna* and *Freeman* which specifically refer to "actionable fraud" in connection with the exception. However, we think that although the "fraud" referred to in the exception certainly includes common law fraud and criminal fraud[5], it is much broader than that. "Fraud" is sometimes defined as "[a] generic term, embracing all multifarious means which human ingenuity can devise, and which are resorted to by one individual to get advantage over another by false suggestions or by suppression of truth, and includes all surprise, trick, cunning dissembling, and any unfair way by which another is cheated. *Johnson v. McDonald,* 170 Okla. 117, 39 P.2d 150." *Black's Law Dictionary,* 594 (5th ed. 1979). Under the Texas Disciplinary Rules of Professional Conduct of the Rules of the State Bar of Texas, a lawyer may, and in some cases must, reveal confidential information of a client "[w]hen the lawyer has reason to believe it is necessary to do so in order to prevent the client from committing a criminal or fraudulent act." Tex.Disciplinary R.Prof.Conduct 1.05(c)(7) (1989), *reprinted in* Tex.Gov't Code Ann., tit. 2, subtit. G app. (Vernon Supp.1993) (State Bar Rules art. X, § 9).[6] Furthermore, a

---

**4.** *Freeman v. Bianchi,* cited in the text, was, in effect, affirmed by the Supreme Court in an original proceeding for mandamus brought by the losing real party in interest which sought to prevent the discovery ordered by the Court of Appeals. *Granada Corporation v. First Court of Appeals,* 844 S.W.2d 223 (1992). The Court, in denying the petition for writ of mandamus, agreed with the Court of Appeals in its holding that a party seeking to prove crime/fraud ex-

ception to the attorney-client privilege must make a *prima facie* case of the crime or fraud.

**5.** See Chapter 32 of the Texas Penal Code for criminal offenses involving fraud.

**6.** The commentary under Rule 1.05 is indicative that the fraud or fraudulent act that negates the effect of the lawyer-client privilege refers not to

lawyer is prohibited from making a false statement of material fact or law to the court or to a third party and is required to disclose a material fact to the court or a third party "when disclosure is necessary to avoid making the lawyer a party to a criminal act or knowingly assisting a fraudulent act perpetrated by a client." Tex.Disciplinary R.Prof.Conduct 3.03(a)(1) and (2) and 4.01 (1989). Thus, under the crime/fraud exception to the lawyer-client privilege, "fraud" would include the commission and/or attempted commission of fraud on the court or on a third person, as well as common law fraud and criminal fraud. The crime/fraud exception comes into play when a prospective client seeks the assistance of an attorney in order to make a false statement or statements of material fact or law to a third person or the court for personal advantage. In the instant case, the defensive allegation by Volcanic Gardens is that Flores employed Lerma to assist him in making a fraudulent claim.

■ However, a defendant's perception or allegation that the claim against it is fraudulent is not enough to establish *prima facie* fraud or a fraudulent act. Here, Volcanic Garden's allegation is supported by at least some evidence, direct and circumstantial, from Lerma's statements and the deposition of the doctors, that if believed by the jury would establish that Flores was engaging in, or planning to engage in, fraudulent conduct. Under the circumstances of this case, this is a sufficient *prima facie* showing to require the court to make further inquiry as to the specific statements made by Flores to Lerma which caused the latter to conclude that he was being asked to participate in a fraudulent claim.

■ In determining what sort of further inquiry is appropriate, we analogize to the process the trial court uses when documents are claimed to be privileged. When in the course of discovery, a party claiming privilege as to a document requests an *in camera* inspection, it becomes the duty of the court first to determine

whether an *in camera* inspection is necessary. *Enron Oil & Gas Company v. Flores*, 810 S.W.2d 408, 412–13 (Tex.App.—San Antonio 1991, orig. proceeding); Tex. R.Civ.P. 166b(4). If the court rules that the document is privileged and thus not subject to discovery, whether from an *in camera* inspection or from conclusive evidence apart from the document, the sealed document can be included in the record for appellate review. When a party is prevented by protective order from deposing a witness on matters claimed to be privileged, there will ordinarily be nothing in the record from which this Court can determine whether the communications are privileged or subject to one of the exceptions unless the court conducts an *in camera* inspection of the answers made to the written questions. Rule 166b(4) provides for such an inspection of "answers made in camera to deposition questions, to be transcribed and sealed in event the objection is sustained." Flores himself made a request for such an inspection. In his Motion for Protective Order and Objections to Notice of Deposition, he requested that if the court wished to inquire into the attorney-client communications, it conduct the inquiry *in camera*. This procedure will preserve the attorney-client privilege from discovery abuse while at the same time, make it possible for both the trial court and if necessary, this Court, to determine whether any statements made by Flores to Lerma during the attorney-client relationship come within the crime/fraud exception.

■ We conclude that the trial court abused its discretion by granting the protective order in its entirety without first conducting an *in camera* inspection to determine whether the communications are privileged or come within the exception. We are confident that the trial court will vacate the protective order and then follow the procedure for determining whether the answers to the deposition questions are privileged or not.

Mandamus will issue only upon his failure to do so.

a particular kind of fraud but to any fraudulent conduct.

BARAJAS, Justice, concurring.

While I find myself in agreement with the majority's holding, I find it necessary to concur with the majority opinion.

I agree with the majority opinion that a threshold requirement for an *in camera* inspection of allegedly privileged matter requires that a *prima facie* showing be made that the client was contemplating the commission of a fraud or crime. A mere allegation of fraud in the pleadings of fraud are insufficient. *Cigna Corporation*, 838 S.W.2d at 569.

While the majority opinion seeks to broadly define "fraud" as a generic term, I would choose to define "fraud" by the standards of professional conduct to which attorneys, as officers of the court, are held.[7] In holding attorneys to a much higher standard, I would find that "fraud", as envisioned by the crime/fraud exception to the attorney-client privilege, includes the commission and/or attempted commission of fraud *on the court* as well as the established principles of common law fraud and criminal fraud. *See* Tex.Disciplinary R.Prof.Conduct 4.01 (1989). Moreover, I would find that a *prima facie* showing of fraud is made once the attorney, whose services were sought for the purposes of making such false statement, has complied with the ethical responsibility of disclosing a material fact to a third party, including a judicial tribunal, when such disclosure is necessary to avoid making the attorney a party to a fraudulent act perpetrated by a client. *See* Tex.Disciplinary R.Prof.Conduct 4.01(b) (1989). If the *in camera* inspection is conducted as set forth in the majority opinion, I would hold that the attorney-client privilege *does not exist* if it is shown by a preponderance of evidence that the services of the attorney in the instant case were *sought or obtained* to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a fraud, including a fraud on the court, for personal advantage.

7. A critical distinction must be made between an attorney who evaluates the merits of a difficult case, and commences litigation based on his interpretation of existing law, and an attorney who opines, based on facts presented to him

*See Cigna Corporation*, 838 S.W.2d at 569; *See* Tex.R.Civ.Evid. 503(d)(1).

by the prospective client, that his services are sought for the purpose of enabling another to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud.