Opinion issued September 21, 2006








     









In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00236-CV




IN RE GEORGE J. PARNHAM AND 
GEORGE J. PARNHAM, ATTORNEY AT LAW, P.C. , Relators




Original Proceeding on Petition for Writ of Mandamus




O P I N I O N
           Relators, George J. Parnham and George J. Parnham, Attorney at Law, P.C.
(collectively, “Parnham”), have filed a petition for writ of mandamus complaining of
the trial court’s March 9, 2006 order sanctioning Parnham’s counsel, Jackson Walker,
L.L.P., James A. Drexler (“Drexler”), and Peter R. McLain with disqualification for
examining and attempting to copy privileged documents of real party in interest,
Clara Harris, and her counsel, Dean M. Blumrosen.


 In three issues, Parnham
complains that the trial court abused its discretion by (1) applying an improper
standard, that articulated in In re Meador,


 to disqualify his counsel; (2) failing to
apply the proper standard, that articulated in In re Nitla;


 and (3) concluding that the
evidence presented satisfied the Nitla standard. 
          We conditionally grant the petition for writ of mandamus. 
Background
          In the underlying suit, Harris sued Parnham over fees and alleged breaches of
fiduciary duty stemming from Parnham’s representation of Harris in a prior matter. 
During the course of litigation, Parnham’s counsel, Drexler, requested inspection of
certain documents that were responsive to Parnham’s discovery requests.


 Harris’s
counsel, Blumrosen, agreed to permit inspection at his office on October 19, 2005. 
Because Blumrosen was to be out of town on that day, he drafted a letter to Drexler,
stating as follows: “Please find documents responsive to your discovery requests in
the conference room Bates stamped H0001–H01326. After you have reviewed the
documents, please inform my assistant, Andrew Lee, of the documents you are
requesting copies of and we will send them out to a copy service for you.” 
Blumrosen instructed his legal assistant, Michelle Tucker, to give Drexler the letter
immediately upon Drexler’s arrival. 
          On the morning of October 19, Drexler and Gary Washington


 arrived at
Blumrosen’s office. It is undisputed that Tucker gave Drexler the letter from
Blumrosen and that Drexler read it. The parties dispute whether Washington saw the
letter. The parties do not dispute that Andrew Lee, Blumrosen’s law clerk, led
Drexler and Washington into the conference room and that, upon entering,
Washington asked, “Is this everything?” and Lee replied, “Yes.” The parties dispute
the events that followed. 
          Lee stated in his affidavit that he had personally Bates stamped the documents
that Blumrosen authorized for inspection and had placed them in separate folders on
the conference table. Lee admitted that he had also inadvertently placed the entire
litigation file on the conference room table. Lee stated that, although he remained in
the conference room while Drexler and Washington examined the documents and he
witnessed the taking of notes, Lee was actively engaged in working on other matters
and did not see the specific documents that Drexler and Washington were reviewing. 
Lee stated that, after approximately two hours, Drexler and Washington left to confer
in the hall. According to Lee, Drexler and Washington later returned and stated that
they had contacted an outside copy service to pick up the documents that they had
chosen to copy. Lee stated that Tucker called Blumrosen to ask if Drexler and
Washington were permitted to use their own outside copy service. Washington
briefly spoke with Blumrosen, then hung up and cancelled his copy service. 
According to Lee and Tucker, Drexler and Washington sorted through the documents
that they wanted copied, they handed them to Lee, and Tucker immediately sent the
documents to the copy service. 
          Drexler stated in his affidavit that, when Tucker handed him Blumrosen’s
letter, she “stated to me that all of the files in the room had been put there for our
review.” Drexler contended that the documents on the conference room table were
not separated or segregated in any manner and that he was never advised that any of
the documents were privileged or not subject to inspection. Drexler stated that, at one
point Washington left, without explanation. While he was gone, Drexler realized that
some of the documents that he was reviewing might constitute privileged or
confidential materials that were not intended for inspection. Drexler stated that he
immediately stopped looking through the documents and advised Washington of the
issue. Drexler attested that he “took only generic, non-substantive notes” and “made
a conscious effort not to absorb the substance of any such privileged or confidential
material.” 
          Washington’s affidavit recounted the events as Drexler had stated them. In
addition, Washington explained that he left the room to call a copy service when he
realized that some of the documents would need to be copied and that he did so
without talking to Drexler. Washington stated that he advised Tucker that the copy
service was on the way. Moments later, Tucker transferred a phone call to him from
Blumrosen. Blumrosen stated that he would have the documents copied and sent over
to Drexler and Washington. Washington agreed and cancelled his own copy service. 
Subsequently, Drexler asked Washington to step outside, where he explained that
there might be confidential documents mixed in with the authorized documents on the
conference table. Washington attested that they then stopped the inspection. 
          The next day, Blumrosen returned to town and reviewed the copies that had
come back from his copy service. He immediately noticed that his entire attorney-client correspondence file had been copied.


 None of these documents were Batesstamped. Blumrosen immediately contacted Washington, who denied that he or
Drexler had taken any notes.


 Blumrosen then called, e-mailed, and wrote a letter to
Charles L. “Chip” Babcock, lead counsel at Jackson Walker for Parnham, stating that
despite Blumrosen’s strict instructions in his letter restricting the scope of discovery
to the documents Bates-stamped H0001–H01326, Washington and Drexler had
apparently gone through his entire litigation file and had sent non-Bates-stamped,
privileged, and confidential documents to be copied. In addition, pursuant to Texas
Rule of Civil Procedure 193.3(d), Blumrosen asked that any notes taken by
Washington and Drexler be destroyed or returned. 
          Blumrosen and Babcock exchanged a series of letters, attempting to arrive at
a Rule 11 agreement concerning the use of any privileged or confidential information
that Drexler and Washington may have reviewed. After numerous attempts failed,
Harris moved for disqualification of Jackson Walker, Drexler, and McLain. On
March 9, 2006, the trial court granted the motion. It is from this order that Parnham
seeks relief.
 
 
Standard of Review
          A party may seek mandamus relief from an order of disqualification. Nat’l
Med. Enters. v. Godbey, 924 S.W.2d 123, 133 (Tex. 1996). A party is entitled to
mandamus relief if a trial court abuses its discretion or violates a legal duty and the
party has no adequate remedy by appeal. Walker v. Packer, 827 S.W.2d 833, 839
(Tex. 1992); In re Taylor, 113 S.W.3d 385, 389 (Tex. App.—Houston [1st Dist.]
2003, orig. proceeding). A trial court abuses its discretion if “it reaches a decision
so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.”
Walker, 827 S.W.2d at 839; see In re Taylor, 113 S.W.3d at 389. With respect to
factual issues, matters are committed to the trial court’s discretion, and the reviewing
court may not substitute its judgment for that of the trial court. Walker, 827 S.W.2d
at 839. The relator must establish that the trial court reasonably could have reached
only one decision. Id. at 840. With respect to a trial court’s determination of legal
principles, however, review is much less deferential. Id. A trial court has no
discretion to determine what the law is or how to apply the law.  Id. A clear failure
by the trial court to analyze or to apply the law correctly will constitute an abuse of
discretion and may result in the issuance of an extraordinary writ. Id. 
 
 
The Applicable LawIn his first issue, Parnham complains that the trial court abused its discretion
by disqualifying his counsel based upon an inapplicable standard, that articulated in
In re Meador, 968 S.W.2d 346, 351–52 (Tex. 1998). In his second and third issues,
Parnham complains that the trial court erred by failing to apply the applicable
standard, that articulated in In re Nitla, 92 S.W.3d 419, 423 (Tex. 2002), and by
disqualifying his counsel without evidence to satisfy that standard. We conclude that
neither standard applies and that this case is instead governed by Texas Rule of Civil
Procedure 193.3. See Tex. R. Civ. P. 193.3(d).
A.      In re Meador 
          In his first issue, Parnham contends that the trial court improperly disqualified
his counsel based upon an application of the Meador standard. Specifically, Parnham
contends that Meador is inapplicable when, as here, opposing counsel inadvertently
produces privileged materials during the normal course of discovery. 
          Harris contends that Meador applies because her privileged materials were
received outside the normal course of discovery. Specifically, Harris contends that,
because Blumrosen’s letter restricted the scope of discovery to those Bates-stamped
documents within a specific range (H0001–H01326) and the unauthorized documents,
which were not Bates-stamped at all, let alone numbered within the specified range,
fell outside of that scope, the documents were received outside the normal course of
discovery. We disagree. 
          In Meador, the Texas Supreme Court considered whether the interests of
justice required disqualification of a lawyer who had received an opponent’s
privileged materials “outside the normal course of discovery.” Meador, 968 S.W.2d
at 351–53. There, Peterson, who was working as an executive assistant at the Nichols
Machinery Company (“CLN”), discovered materials concerning a suit against CLN
by Meador, a former employee. Id. at 348. Peterson copied several documents,
including a settlement letter, various correspondence, information about settlement
funds, and notes about the Meador case. Id. Peterson then quit her job and took the
copies with her. Id.
          Peterson delivered a copy of the settlement letter to Meador and to Meador’s
attorney, Masterson. Id. at 349. When Peterson met with Masterson, Peterson also
retained him to represent her in her own claims against CLN. Id. Later, during
CLN’s deposition of Meador, Meador gave CLN a copy of the settlement letter and
divulged that other documents had been copied. Id. Months later, in response to a
notice of deposition and subpoena duces tecum from CLN, Peterson gave copies of
all the documents to Masterson, who copied them. Id. Peterson produced the
documents at her deposition a week later. Id.
          Upon seeing the documents, CLN asserted that the documents contained
privileged information and demanded that all copies of the documents be returned. 
Id. When Masterson refused to return the copies, CLN moved to disqualify him from
representing Meador. Id. The trial court ordered Masterson to return the copies to
CLN and not to use them, but refused to disqualify Masterson. Id. CLN sought
mandamus relief in the court of appeals. Id.
          The court of appeals granted relief, ordering Masterson disqualified on the
grounds that Masterson had failed to contact CLN when he first received the
settlement letter from Peterson. Id. The court determined that Masterson’s conduct
fell below the standard that an attorney who receives confidential information must
follow, pursuant to American Bar Association (“ABA”), Formal Opinion 94–382. Id. 
Masterson sought mandamus relief in the Texas Supreme Court. Id.
          The supreme court granted mandamus relief, holding that Masterson should not
have been disqualified. Id. at 354. The court stated that the ABA Formal Opinion
is an aspirational goal, not a standard for disqualification, and that no specific Texas
disciplinary rule applies to the circumstances of this case. Id. at 351. The court
explained that a lawyer should not be disqualified for a disciplinary violation that has
not resulted in actual prejudice to the party seeking disqualification. Id. at 350. To
determine whether “the interests of justice require disqualification,” a trial court
should consider the following factors: (1)whether, at the time of the disclosure, the attorney knew or should
have known that the material was privileged;
          (2)     the promptness with which the attorney notifies the opposing side
that he or she has received its privileged information;
          (3)     the extent to which the attorney reviews and digests the privileged
information;
          (4)     the significance of the privileged information (i.e., the extent to
which its disclosure may prejudice the movant’s claim or defense,
and the extent to which return of the documents will mitigate that
prejudice);
          (5)     the extent to which the movant may be at fault for the
unauthorized disclosure; and 
          (6)     the extent to which the nonmovant will suffer prejudice from the
disqualification of his or her attorney.
Id. at 351–52 (referred to herein as “the Meador standard”). 
          The supreme court emphasized thatthese factors apply only when a lawyer receives an opponent’s
privileged materials outside the normal course of discovery. If a lawyer
receives privileged materials because the opponent inadvertently
produced them in discovery, the lawyer ordinarily has no duty to notify
the opponent or voluntarily return the materials. Rather, the producing
party bears the burden of recovering the documents by establishing that
the production was involuntary. See Granada Corp. v. First Court of
Appeals, 844 S.W.2d 223, 226 (Tex. 1992). . . . [W]e express no opinion
on the proper standard for disqualifying an attorney who was directly
involved in wrongfully procuring an opponent’s documents.
 
Id. at 352 (emphasis added).
          Thus, the Meador standard would apply in the instant case only if Parnham’s 
counsel had received Harris’s documents outside the normal course of discovery. 
Parnham does not cite any authority, and we find none, that defines “the normal
course of discovery.” Discovery is “compulsory disclosure, at a party’s request, of
information that relates to the litigation . . . [and is] primarily conducted through
interrogatories, depositions, requests for admissions, and requests for production.” 
Black’s Law Dictionary 498 (8th ed. 2004); see Tex. R. Civ. P. 192.7 (defining
written discovery as “requests for disclosure, requests for production, and inspection
of documents and tangible things”). A request for production is “a party’s written
request that another party provide specified documents or other tangible things for
inspection and copying.” Black’s Law Dictionary at 1331. 
          Here, Harris contends that the trial court properly applied the Meador standard
because the court “clearly made a fact finding that the conduct at issue was, indeed,
done outside the normal course of discovery.”


 However, the trial court’s order stated
that the presence of the unauthorized documents in the conference room was
inadvertent and that their viewing occurred during “the authorized document
production.” 
          The record shows that Drexler made a written request to inspect Harris’s
documents that were responsive to Parnham’s requests for production numbered 15,
16, and 17. Drexler and Washington went to Blumrosen’s office on October 19, 2005
to inspect these documents. Thus, Drexler and Blumrosen were in the course of
conducting discovery when they went to Blumrosen’s office. It was during the
session at Blumrosen’s office that the unauthorized documents appeared. By contrast,
in Meador, opposing counsel received documents that a non-party, of her own
volition, had stolen from a party and then delivered to opposing counsel. See
Meador, 968 S.W.3d at 349. The receipt of the documents in Meador was clearly
outside the normal course of discovery. 
 
          We conclude that the unauthorized documents were inadvertently produced
during the normal course of discovery, and, therefore, the Meador standard does not
apply. See Meador, 968 S.W.2d at 352. We reject Harris’s equating her intended
scope of discovery, as outlined in Blumrosen’s letter, with the “normal course of
discovery.” Accordingly, we sustain Parnham’s first issue.
B.      In re Nitla
          In his second issue, Parnham contends that the standard articulated in Nitla is
applicable to the instant case and that, as required by Nitla, Harris failed to show that
she was actually prejudiced by a review of privileged materials and that the trial court
lacked any means lesser than disqualification to remedy the harm. See Nitla, 92
S.W.3d at 423. We disagree that Nitla is applicable to the instant case.
          In Nitla, a pharmaceutical company, Nitla, sued Bank of America (“BOA”). 
Id. at 420. During discovery, BOA asserted that certain documents were privileged
and submitted them for in camera inspection in the trial court. Id. The trial court
determined that the documents were not privileged and ordered production. Id. BOA
moved to stay production until the matter could be reviewed in the court of appeals
because, once Nitla viewed the documents, BOA would suffer irreparable harm. Id.
at 421. During a discovery hearing, the trial court refused to stay production and
physically handed to Nitla the documents that BOA had submitted for in camera
inspection. Id. BOA sought mandamus relief. Id.
          This Court held that most of the documents were, in fact, privileged and
granted relief. Id. BOA then sought in the trial court to disqualify Nitla’s counsel,
alleging that it was improper for Nitla to have reviewed the documents because BOA
had stated an intent to seek appellate relief. Id. at 421–22. The trial court determined
that Nitla had extensively reviewed the documents, but refused to disqualify Nitla’s
counsel. Id. at 421. BOA again sought mandamus relief. Id. Applying Meador, this
Court held that Nitla’s counsel had to be disqualified. Id. Nitla sought mandamus
relief in the supreme court. Id.
          The supreme court determined that the Meador standard was inapplicable
because Nitla had received the documents directly from the trial court during a
discovery hearing. Id. at 423. The court explained that, although there is not a
precise standard for disqualification when a party reviews documents that are later
deemed privileged, the “guiding principles” are (1) whether the review of the
documents caused actual harm to the moving party and (2) whether disqualification
is necessary because the trial court lacks any lesser means to remedy the harm. Id. 
           Because Nitla had received the documents directly from the trial court during
a discovery hearing, and thus there was no inadvertence in the production of the
documents, the facts in Nitla are significantly distinguishable from those in the instant
case. Here, importantly, the trial court found that the documents had been
inadvertently produced. We thus hold that Nitla does not govern the instant case. 
Accordingly, we overrule Parnham’s second issue.



C.      Texas Rule of Civil Procedure 193.3
          As Parnham correctly notes, Texas Rule of Civil Procedure 193.3, known as
the “snap-back rule,” contemplates that, on occasion, certain materials or information
may be inadvertently produced to an opposing party without any intent on the part of
the producing party to waive a claim of privilege. Tex. R. Civ. P. 193.3(d). The rule
provides that
[a] party who produces material or information without intending to
waive a claim of privilege does not waive that claim under these rules
or the Rules of Evidence if—within ten days or a shorter time ordered
by the court, after the producing party actually discovers that such
production was made—the producing party amends the response,
identifying the material or information produced and stating the
privilege asserted. If the producing party thus amends the response to
assert a privilege, the requesting party must promptly return the
specified material or information and any copies pending any ruling by
the court denying the privilege.
 
Id. Hence, rule 193.3 permits a party to “snap-back,” or to retrieve, materials that it
has inadvertently produced and to maintain a claim of privilege with respect to the
documents. 
          Rule 193.3 does not specifically restrict the use of the information by the
recipient party. However, once an applicable privilege is asserted and attaches, the
information is protected from use. See In re E.I. DuPont de Nemours & Co., 136
S.W.3d 218, 223 (Tex. 2004) (outlining steps to asserting applicable privileges and
stating that documents deemed privileged are not subject to discovery and may not
be considered by factfinder, even if factfinder is trial court).
          We conclude that rule 193.3 governs instances of inadvertent disclosure that
occur during discovery, as here, and that it does not provide for, nor does it appear
to contemplate, disqualification of the recipient party’s counsel.



Disqualification
          The trial court found that Harris’s counsel, Blumrosen, had inadvertently
produced the documents at issue to Parnham’s counsel, Drexler and Washington. The
next day, when Blumrosen viewed the documents that had been returned from the
copy service, he discovered that his attorney-client correspondence file, comprised
of letters from Harris to Blumrosen concerning the instant case, had been included in
the documents sent for copying. The parties do not dispute that Parnham’s counsel
was never in possession of the documents outside of Blumrosen’s office and that all
of the documents were recovered from the copy service and were never sent to
Parnham’s counsel. Thus, there are no documents to “snap back” to counsel, but an
issue of privilege exists as to their use. 
          When the attempts to arrive at a rule 11 agreement regarding the use of the
information contained in the documents failed, Harris sought disqualification. The
parties do not dispute that there was not a hearing on the applicability of privileges
to the documents at issue herein; rather, Harris moved directly for disqualification.


 
The trial court concluded that the exclusion of any “improperly gained information” 
was not sufficient to protect Harris and ordered disqualification of Parnham’s
counsel. The trial court also concluded that the documents were privileged,
presumably based upon the in camera review. Rule 193.3(d) contemplates a hearing
on the privilege, and if the privilege is sustained, then counsel may assert it despite
any inadvertent disclosure. The assertion of the privilege allowed in rule 193.3(d)
thus contemplates that such documents will not be used in the litigation. The rule
does not contemplate disqualification of counsel.
          Disqualification is a severe remedy that “can result in immediate and palpable
harm, disrupt trial court proceedings, and deprive a party of the right to have counsel
of choice.” Nitla, 92 S.W.3d at 422. Hence, an exacting standard must be applied
in determining a motion to disqualify counsel. Id. We hold that the applicable rule
in this case is Texas Rule of Civil Procedure 193.3 and that rule 193.3 does not
provide authority for disqualification of counsel who review inadvertently disclosed
materials during the course of discovery.
Conclusion
          We hold that the trial court abused its discretion in disqualifying Parnham’s
counsel. We therefore conditionally grant Parnham’s petition for writ of mandamus
and direct the trial court to vacate its March 9, 2006 order of disqualification. We are 
confident that the trial court will promptly comply, and our writ will issue only if it 
does not. 
 

                                                             Tim Taft
                                                             Justice

Panel consists of Justices Taft, Higley, and Bland.