**VALERO TRANSMISSION, L.P. and Valero Transmission (Delaware) Company, Relators,**

v.

**The Honorable Steven M. DOWD, Respondent.**

No. 96–0388.

Supreme Court of Texas.

June 20, 1997.

Rehearing Overruled July 14, 1997.

Douglas W. Alexander, Austin, Mike Parker, Carthage, T. John Ward, Longview, Craig A. Morgan, Austin, for Relators.

T. G. Davis, Carthage, J. Clifford Gunter, III, Houston, F. Franklin Honea, Dallas, for Respondent.

OWEN, J., filed a dissenting opinion in which HECHT, J., joins.

OWEN, Justice, dissenting from Overruling of Motion for Leave to File Petition for Writ of Mandamus.

In this mandamus proceeding, Valero contends that nine documents it submitted to the trial court for in camera inspection are privileged and that the trial court abused its discretion in ordering their production. Because this case presents significant issues, I would grant leave to file, and because some of the documents are privileged, I would conditionally grant mandamus relief.

The issues of privilege largely turn on who at Valero was within the "control group" for purposes of the attorney-client privilege and whether and when Valero anticipated litigation for purposes of the party-communication privilege under Rule 166b(3)(d) of the Rules of Civil Procedure. The questions presented by this case are important not only to Valero, who is defending a claim for actual damages in excess of $36,000,000 and unspecified exemplary damages, but to the jurisprudence of this state. The test for determining who is among the control group for purposes of the attorney-client privilege continues to be misunderstood. Further, after our decision in *National Tank Co. v. Brotherton,* 851

S.W.2d 193, 203–07 (Tex.1993) (orig.proceeding), an argument can be made that in asserting the party-communication privilege, a party is not required to anticipate the precise suit or the claims that are brought but that a communication may be privileged if some type of litigation was anticipated. Another issue that our Court has not yet addressed directly is the status of a document that relates to an overall investigation of a situation that is anticipated to lead to many separate claims and that identifies more than one specific claim. Is all or part or none of such a document a party communication in any one suit?

The Court should examine the issues presented in this case. Mandamus is appropriate when the production of privileged documents has been ordered. *See Walker v. Packer*, 827 S.W.2d 833, 843 (Tex.1992) (orig.proceeding).

### I

The plaintiffs in the underlying suit are the Long Trusts which are natural gas producers. The defendants are Tejas Gas Corporation and two Valero entities, Valero Transmission (Delaware) Company and Valero Transmission, L.P. (For convenience, the term "Valero" will be used without an attempt to distinguish between the two companies.) Valero is a pipeline company that contracted to buy natural gas from Tejas Gas Corporation, another pipeline company. Tejas in turn had contracts with producers, including the Long Trusts, to buy gas that it had dedicated to the performance of the Valero/Tejas contracts. The Valero/Tejas and Tejas/Long agreements are what witnesses in the case described as "back to back" contracts. All had take-or-pay provisions.

The Long Trusts allege that as early as 1984, Tejas failed to take or to pay for the contract quantities, and the Long Trusts have asserted take-or-pay claims against Tejas for that and succeeding contract years. The evidence is undisputed that by at least 1985, Valero was concerned that Tejas would assert claims against it for failing to take or to pay for the minimum contract quantity. There is evidence, again undisputed, that Valero had a number of take-or-pay claims asserted against it during the 1980's by other sellers from which it purchased gas and that take-or-pay claims had been asserted against Tejas by producers.

The Long Trusts sued Tejas in 1989. It was not until April of 1994 that Valero was included as a defendant. The Long Trusts claim that Valero intentionally interfered with the contractual relationship between Tejas and the Long Trusts by (1) failing to take the contract quantities specified under the Valero/Tejas contracts knowing that this would cause Tejas to dishonor its producer contracts, (2) strongly urging Tejas to reduce the price paid to the Long Trusts for their gas, and (3) entering into and administering a settlement agreement with Tejas. With regard to the settlement agreement, the Long Trusts contend that Valero agreed to pay a percentage of any judgment that the Long Trusts recover against Tejas and that in consideration for that agreement, the litigation brought by the Long Trusts against Tejas cannot be settled without Valero's consent.

During the course of discovery, Valero asserted claims of privilege in response to requests for production of documents by the Long Trusts. Valero submitted the documents for in camera inspection and tendered a log of privileged documents and eight affidavits. The trial court conducted an evidentiary hearing. At the conclusion of these proceedings, the trial court entered an order finding:

- the legal representatives of the client for the purposes of the attorney-client privilege were limited to four individuals (Palmer Moe, Joe Becraft, Durland Eakin, Stan McLelland);

- communications on and after March 11, 1993, including those between Valero and Tejas, were in connection with the prosecution, investigation, or defense of the claims made by the Long Trusts;

- communications prior to March 11, 1993 do not qualify as party-communications, work-product, or witness-statement exceptions under Rule 166b(3);

- reports and memoranda prepared by personnel outside Valero's legal depart-

ment, although under the auspices of in-house counsel, are not protected under the work product exemption of Rule 166b(3); and

- neutral recitals of facts that are otherwise attorney work product, party communications, or witness statements, must be disclosed.

The trial court ordered Valero to produce the nine documents at issue here, among others. Valero unsuccessfully sought relief in the court of appeals and has filed this mandamus proceeding.

## II

I first consider several arguments asserted by the Long Trusts that apply to many of the documents.

The Long Trusts contend that the party-communication privilege does not apply to documents prepared prior to March of 1993. They argue that Valero could not have anticipated a suit by the Long Trusts until much later because the Long Trusts themselves did not know that they had claims until Tejas finally produced certain documents in this lawsuit. This contention is untenable. The fact that the Long Trusts did not realize that they had claims is no evidence whatsoever that Valero did not anticipate litigation well before the Long Trusts did. The extensive discussions and negotiations between Valero and Tejas spanning several years indicate that there was concern that litigation with producers such as the Long Trusts would ensue and that Tejas would in turn sue Valero.

The evidence is undisputed that Valero dramatically reduced its purchases from Tejas and other suppliers in the 1980's and that there were many take-or-pay or related claims and suits pending against Valero when each of the documents at issue was prepared. The severity of the situation was such that Valero did in fact anticipate litigation over reduced purchases from the wells dedicated to the Tejas/Long Trusts contracts that were "back to back" with the Tejas/Valero contracts.

Under our decision in *National Tank*, 851 S.W.2d at 204, if a reasonable person would conclude from the severity of an incident and other circumstances surrounding it that there was a substantial chance litigation would result, then the objective prong of the "in anticipation of litigation" test is met. *Id.* This does not mean that the plaintiff must have manifested an intent to sue. *Id.* Compare *Scott v. Twelfth Court of Appeals,* 843 S.W.2d 439, 440–42 (Tex.1992) (orig.proceeding) (decided before *National Tank,* holding that privilege did not apply when defendant anticipated litigation over defective forklift guard but did not know if the plaintiff thought the guard was defective). The party-communication privilege turns on whether a reasonable person, based on circumstances at the time of the investigation, would have anticipated litigation and prepared accordingly. *National Tank,* 851 S.W.2d at 203–04 (citing *Flores v. Fourth Court of Appeals,* 777 S.W.2d 38, 40–41 (Tex.1989) (orig.proceeding)). Thus, what the plaintiff knew is not a factor in determining whether the party-communication privilege applies.

There is also a subjective prong for establishing the party-communication privilege, which is whether the party claiming the privilege believed in good faith that litigation would ensue. We have held that it is not necessary that litigation be threatened or imminent. It is sufficient if the circumstances indicate that the materials were prepared because of the prospect of litigation. *Id.* at 205.

The more difficult question in this case is whether Valero, which unquestionably anticipated litigation with Tejas, must have anticipated that the Long Trusts would sue Valero directly. This is a close question, but on balance I believe that the answer should be no. Valero was concerned for many years about producer claims that were made against Tejas because this translated directly into a potential claim by Tejas against Valero. Indeed, Tejas could have attempted to bring Valero into the producer suits as a third-party defendant. Valero actively investigated the producer claims against Tejas and its own potential liability that existed because of those claims. The party-communication privilege should not depend on whether the investigating party foresaw who

the actual plaintiff would be. It should be enough that litigation over the situation was anticipated. *See National Tank*, 851 S.W.2d at 204 (if a reasonable person would conclude from the severity of the accident and the other circumstances surrounding it that there was a substantial chance that litigation would ensue, then the objective prong is satisfied). To the extent earlier decisions of the Court indicate otherwise, *National Tank* governs. *See, e.g., Turbodyne Corp. v. Heard*, 720 S.W.2d 802, 803–04 (Tex.1986) (orig.proceeding) (holding in a subrogation suit brought by an insurance company that documents were not privileged because there was no evidence that company's post-accident investigation was prepared in anticipation of the subrogation claim as opposed to the insured's claim under the policy).

## III

The remaining arguments of the parties are best assessed in connection with the specific documents, which I now consider.

### 1. Letter of December 27, 1989

This letter from Valero's outside counsel, Gregory King of the law firm of Bracewell & Patterson, to Stan McLelland, the general counsel of Valero, transmits a draft of a tolling agreement between Valero and Tejas and gives specific legal advice regarding the draft. Valero contends that both the letter and the attached draft are protected by the attorney-client privilege.

The Long Trusts argue that since this and other drafts of the Tolling Agreement were produced, Valero has waived any claim of privilege. This argument is meritless. The cover letter is, on its face, privileged. The fact that drafts of the tolling agreement were produced does not entitle the Long Trusts to discover what legal advice may have been conveyed to Valero about the tolling agreement.

The particular draft attached to the letter giving legal advice is also privileged because the Long Trusts are not entitled to know which drafts were reviewed by counsel for the purpose of giving legal advice. *See generally Marathon Oil Co. v. Moyé*, 893 S.W.2d 585, 589 (Tex.App.—Dallas 1994, orig. proceeding) (providing that privilege attaches to legal advice and factual information included in communications between attorney and client); *Pittsburgh Corning Corp. v. Caldwell*, 861 S.W.2d 423, 425 (Tex. App.—Houston [14th] 1993, orig. proceeding) (stating that it is "inconceivable" that sound legal advice could be obtained without a communication of facts in holding that factual recitations in written attorney-client communication were privileged); *GAF Corp. v. Caldwell*, 839 S.W.2d 149, 151 (Tex.App.—Houston [14th] 1992, orig. proceeding) (holding that facts communicated to attorney in obtaining legal advice are part of the complete communication between client and counsel and the entire communication is privileged).

The fact that a party sought legal advice on any particular subject matter is itself privileged unless put in issue by the party claiming the privilege. *See Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex.1993) (orig.proceeding). No contention has been made that Valero has put at issue the fact that it sought legal advice or the nature of that legal advice. If a copy of this particular draft was sent to Tejas or otherwise had general, nonprivileged circulation, those copies of the draft must be produced. But the Long Trusts are not entitled to discover which draft among many was attached to this letter.

### 2. Letter of March 15, 1991

For the same reasons, the March 15, 1991 letter and its attachment are likewise privileged. It is from the same attorney as the previous letter, King of Bracewell & Patterson. It is addressed to both McLelland (the general counsel of Valero) and Jeffrey Parish "Vice President/Strategic Planning," and attaches a letter from Tejas. King's letter, on its face, is an attorney-client communication. The only basis on which the Long Trusts argue that it is not privileged is that Jeffrey Parish was not among those found by the trial court to be in the control group. The trial court's ruling was error and a clear abuse of discretion.

First, the letter transmits legal advice directly to Parish, a vice president, and reflects that King will be discussing legal issues with Parish. This in and of itself is evidence that Parish had authority to seek and act on advice of counsel. But the determination of privilege need not depend on this very obvious inference. Parish testified that at the time this letter was written, he had the authority to evaluate legal advice and act upon it. The only information in the record that the Long Trusts contend raises a fact question on this issue is that Parish also said that he reported directly to Valero's general counsel, and Parish agreed on cross-examination that it was part of his duties to perform whatever assignments the general counsel gave him. This does not refute or call into question the clear, direct testimony of Parish that he had authority to seek and act on, and did act on, legal advice.

The copy of the Tejas letter attached to King's letter is privileged because the Long Trusts are not entitled to know that Valero sought and obtained legal advice about the Tejas letter. Of course, for the reasons discussed above, other copies of the letter must be produced because the communication is not otherwise privileged.

3. Interoffice Memo of April 23, 1984

Valero contends that this internal memorandum from one of its employees to one of its in-house attorneys is an attorney-client communication and a witness statement. The document shows on its face that it is providing information requested by the lawyer. However, under our decision in *National Tank* and TEX.R. EVID. 503, this communication is not covered by the attorney-client privilege. There is no evidence that the Valero employee who wrote it was seeking or had the authority to seek or to act on legal advice, other than the affidavit of Valero's general counsel which said that all employees of Valero had authority to seek and act on legal advice. That broad, conclusory statement will not suffice.

While I concede that this document does not fall within Rule 503, it points up the need to amend our rules of evidence. A large corporation, such as Valero, must have the means of obtaining meaningful legal advice without waiving its privileges. A hypothetical example illustrates the inadequacy of the current definition of who is a "representative of the client." Rule 503 now says that a "representative of the client" is one who has authority to obtain legal services or to act on that legal advice. TEX.R. CIV. EVID. 503(a)(2). Suppose a corporation seeks legal advice about some aspect of its operations to determine if it is in compliance with its contracts or perhaps with governmental regulations. And assume that its lawyer cannot adequately advise the client without knowing all the facts about this aspect of the company's operations. It is extremely naive to think that the "upper echelon" of management (a term used in *National Tank*, 851 S.W.2d at 197) in a large organization will possess the kind of detailed, nitty-gritty facts that are often necessary to such an analysis. The knowledge of operational or middle management personnel is essential.

Under Rule 503, neither the lawyer nor members of upper management can seek out this information and maintain the attorney-client privilege. Even if a memo from upper management to an employee who does not have authority to act on legal advice clearly says, "The company is seeking legal advice and needs to know . . . ," that communication is not privileged because it is not between a representative of the client (as defined in the rule) and another representative of the client. Nor would it fall within any of the other provisions of Rule 503(b). For the same reasons, a communication between the lawyer and the employee who has possession of the facts that the lawyer needs to know to render legal advice is not privileged. Such a rule impairs a corporation's right to effective legal counsel.

Although Valero also contends that this memo is a witness statement within the meaning of TEX.R. CIV. P. 166b(3)(c), there is no indication from the face of the document or in the record that this document was prepared in anticipation of litigation. Accordingly, it is not privileged. *See* TEX.R. CIV. P. 166b(3)(c) (providing that privilege applies to written statements made in connection with prosecution, investigation, or de-

fense of the particular suit or in anticipation of the prosecution or defense of the pending litigation).

### 4. Interoffice Memos of November 21, 1988 and August 10, 1990

The fourth document at issue is a November 1988 memorandum to Joe Becraft, whom the trial court found to be member of the control group, from F.C. Hartley, a vice president of Valero in its gas supply and contract administration group. The document reflects that copies were to be sent to two other members of the control group as found by the trial court (Durland Eakin and the general counsel Stan McLelland) and another in-house attorney for Valero. I agree that the record is insufficient to establish the attorney-client privilege. There is no evidence that Hartley, the author of the memo, is a member of the control group other than the general counsel's blanket assertion in his affidavit. However, at least part if not all of the memo should be held to be privileged as a party communication.

The first part of the memo discusses a particular claim against Tejas made by a producer other than the Long Trusts. However, the latter part of the memo deals generally with anticipation of other producer claims. The fact that this document relates to more than one potential suit does not change the fact that it was made "in anticipation of the prosecution or defense of the claims made a part of the pending litigation." TEX.R. CIV. P. 166b(3)(d).

With regard to the discussion of a specific claim by a producer other than the Long Trusts, if the Long Trusts or another producer could discover that part of the memo and share it with the claimant, the privilege would be rendered meaningless. I would hold that Rule 166b(3)(d) simply did not contemplate that a single document might contain party communications about more than one potential claim arising out of common facts. In such a situation, the communication should retain its privileged status in its entirety. For the same reasons, the fifth document at issue, an August 1990 memo, should be held to be privileged.

### 5. Interoffice Memo of August 10, 1990

This memorandum reflects on its face that it was prepared in anticipation of claims by producers such as the Long Trusts against Tejas and corollary claims against Valero. It was written to Martin Zolkoski by Lowell Moore, an employee of Valero who was involved in ongoing negotiations with Tejas. Zolkoski discussed the memorandum in an affidavit submitted to the trial court:

> [I]t was my belief that there was a high probability that litigation between Valero and Tejas relating to producer claims, such as those made by The Long Trusts, would ensue unless some arrangement could be reached with Tejas. It was in this context that I requested Mr. Moore to meet with Mr Blankenship [at Tejas]. After Mr. Moore met with Mr. Blankenship, he prepared a memorandum to me dated August 10, 1990, summarizing his meeting with Mr. Blankenship. My communications with Mr. Moore regarding this situation were intended to be confidential and I did not intend for the communications to be disclosed to third persons other than those parties to whom disclosure was necessary in connection with defending any take or pay claims or in the anticipation of defending against any such claims.

An affidavit from Lowell Moore also states that Moore anticipated litigation with Tejas at the time this memo was prepared. This communication should be privileged under *National Tank.*

### 6. Interoffice Memo of July 12, 1993

This is another document that highlights some of the problems with both the attorney-client privilege as currently embodied in Rule 503 of our Rules of Civil Evidence and the party-communication privilege in Rule 166b(3)(d) of our Rules of Civil Procedure.

The trial court found that communications on or after March 11, 1993 were in connection with the prosecution, investigation, or defense of the Long Trusts' suit against Valero. This memorandum and the attachments were prepared after March 11, 1993, and once again, there can be no doubt from the face of the documents that they were

prepared in the course of investigating potential claims by the Long Trusts and others. The affidavits submitted to the trial court also offer explicit evidence of that fact.

The memorandum and attachments were sent by Travis Crow to Ron Clements. Clements explained in his affidavit that he had been asked by Marcy Collins, an attorney for Valero, to review all gas purchase contracts with take-or-pay clauses that could subject Valero to litigation. He further asserted that at the time he received this request from counsel, he personally "felt there was a substantial chance that litigation would result in connection with some or all of these contracts." Further, Clements stated in his affidavit that he had authority to obtain and to act on advice rendered by counsel for Valero.

In response to the request from Valero's counsel, Clements asked Travis Crow to prepare a document setting forth potential take or pay exposure that might be alleged under four contracts from January 1, 1989 forward. Crow did so, and his study analyzed not only two of the Long Trusts' wells, but 95 other wells operated by other producers. However, there is no evidence that Crow, as opposed to Clements, had the authority to seek and act on legal advice. Clements forwarded Crow's memo and the attached schedules to Valero's counsel, and Clements intended that the results of the study he had commissioned not be disclosed to third parties and that the memo and study be maintained as confidential information.

Thus, we have a situation where Valero's counsel and a Valero representative that the trial court should have included in the control group asked for a study to be done so that Valero could analyze its potential exposure under four contracts. The fact that the leg work in gathering the relevant facts that were reported to counsel was done by someone who was not in the control group should not result in the waiver of the attorney-client privilege. Such a result promotes form over substance. It is not reasonable or good policy to require either lawyers or those who can seek and act on legal advice to do the detailed fact gathering in a large corporation that is often necessary to facilitate the rendi-

tion of legal advice. As already noted above, our current Rule 503 is unfair to corporate litigants and does not take reality into account.

However, the party-communication privilege should apply to this document. The portions of Valero's calculations that deal with the Long Trusts are party communications because they relate to this specific suit. Calculations regarding other producer contracts should likewise be privileged. The Long Trusts should not be permitted to discover and share those calculations. The privilege would be meaningless. I would hold that a single document that contains party communications about several potential claims arising out of common facts is privileged under Rule 166b(3)(d).

The Long Trusts contend that even if this study was otherwise privileged, they are entitled to its production because Valero has asserted that there were no contract deliverability tests and this document shows otherwise. Once again, these assertions by the Long Trusts are refuted by the document itself and by affidavits. The study is based on actual production, not contract deliverability tests that might have shown what the wells were *capable* of producing. No one contends that there is any dispute about what the wells actually produced. Valero's internal calculations of its potential damage exposure in litigation are not discoverable.

### 7. Interoffice Memo of March 25, 1986

This memorandum contemplates claims by producers that have contracts with Tejas and summarizes discussions between Tejas and Valero. Although it is addressed to a member of the control group, Durland Eakin, there is no evidence that the author of the memo was authorized to seek or to act on legal advice.

The document's status as a party communication is also unclear from the record. Although the document does indicate that Valero was concerned about take or pay exposure under its Tejas contract in connection with certain specific producers, there is no indication that this memo discusses the Long Trusts. The party-communication privilege,

for better or worse, does not protect specific communications about potential claims by specific producers when the Long Trusts are not among those producers. *See Republic Ins. Co.*, 856 S.W.2d at 164–65.

8.   Interoffice Memo of March 3, 1986

This memorandum has attached to it a letter dated January 21, 1986 with handwritten notes by several individuals. Valero contends that all of these communications are privileged. I agree with regard to the handwritten notes of Ron Clements because they reflect the substance of his conversations with Valero's legal department about Btu adjustments ordered by the Federal Energy Regulatory Commission and the Texas Railroad Commission. The trial court's list of documents has the word "Redact" by this document, indicating that the privileged notes are to be redacted on the copy to be produced, but Valero points out that "Redact" does not appear in connection with other copies of the same document. To the extent that the trial court ordered the production of any copy of this document without redaction of the privileged notes, it abused its discretion

The cover memo reflects concerns by Valero about producer claims in connection with its Tejas contract. Valero contends this is a party communication, however, as with the previous memo, this communication deals with specific producers and neither the evidence in the record nor the memo itself reflects that the Long Trusts are among them. The party-communication privilege does not apply to the specific claims or potential claims by other producers.

\*      \*      \*      \*      \*      \*

Valero is entitled to mandamus relief, and the Court should have granted it. The Court also owes it to our jurisprudence and to the ongoing review of our rules of procedure and evidence to resolve the questions raised by this petition.

HECHT, J., joins.